UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>RIVER VIEW CONSTRUCTION, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-03514 PJH (DMR)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

    Plaintiffs Boards of Trustees for Laborers Trust Funds move the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of a default judgment against Defendants River View Construction, Inc. and Gregory Goreshnik. Plaintiffs ask the court to order Defendants to pay due and unpaid employee benefit contributions, liquidated damages, interest, and attorneys' fees and costs. They also ask for an injunction requiring Defendants to submit to an audit of its books and records from January 2012 through the present. For the reasons below, the court recommends that Plaintiffs' motion be granted.

**I. Background & Procedural History**

    Plaintiffs are the Boards of Trustees for Laborers Health and Welfare Trust Fund for Northern California, Vacation-Holiday Trust Fund for Northern California, Pension Trust Fund for Northern California, and Training and Retraining Trust Fund for Northern California ("the Trust Funds"). The Trust Funds, established under Trust Agreements, consist of, *inter alia*, all employee

fringe benefit contributions that are to be made by employers pursuant to collective bargaining agreements. (Hagan Decl. Jan. 23, 2013, ¶ 10, Exs. A, B (Trust Agreement for Laborers Pension Trust Fund[1]).) Plaintiffs allege that the Trust Funds are multi-employer employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, 1003. (Compl. ¶¶ 3-5.) Plaintiffs allege that Defendant River View Construction, Inc. ("River View") is an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and an employer in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Compl. ¶ 7.) Plaintiffs further allege that Defendant Gregory Goreshnik, an individual, is River View's Responsible Managing Officer (RMO), CEO and President, and that at all relevant times, Defendants constituted a single employer. (Compl. ¶ 7; Winchester Decl. Jan. 31, 2013, ¶ 3, Ex. A.)

According to the Complaint, River View executed a series of Work Authorizations and Addenda to Master Subcontract Agreements (individual project agreements) by which it became bound to a written collective bargaining agreement with the Northern California District Council of Laborers ("Laborers Union").[2] (Compl. ¶ 9; Hagan Decl., ¶ 6, Ex. F.) Plaintiffs allege that by signing the addenda, River View entered into a written collective bargaining agreement with the Laborers Union, the Laborers' Master Agreement for Northern California ("Master Agreement"). (Compl. ¶ 9; Hagan Decl. ¶ 6.)

The Master Agreement requires that employers make contributions to the Trust Funds based on the hours that their respective employees worked as laborers. (Compl. ¶ 10; Hagan Decl. ¶ 16, Ex. G.) An employer that fails to provide timely contributions is subject to interest on the delinquent contributions at the rate of 1.5% per month, as well as liquidated damages, which are set at $150 for each month that the contribution is delinquent. (Compl. ¶ 10; Hagan Decl. ¶ 16, Ex. H.)

---

[1] Plaintiffs represent that the Trust Agreements for all four of the Trust Funds contain the same terms and conditions as the Trust Agreement for the Pension Trust Fund for Northern California and therefore, the references to the Pension Trust Fund apply to all the Trust Funds. (Hagan Decl. ¶ 11.)

[2] The work authorization/addenda agreements are the McClymonds High School Project, Claremont MS Landscape Improvements Project, and the Prescott Modernization Project. (Compl. ¶ 9; Hagan Decl. ¶ 6.)

The Trust Agreement permits the Boards of Trustees to file a lawsuit to recover payment of contributions due and to seek attorneys' fees and costs incurred in a suit to recover delinquent contributions. (Compl. ¶ 10; Hagan Decl. ¶ 13, Ex. D.) It also provides that an employer must submit to an audit by the Boards of Trustees. (Compl. ¶ 33; Hagan Decl. ¶ 14, Ex. E.)

Plaintiffs allege that for the periods September 2010 through November 2010 and August 2011, River View reported contributions due and owing, but failed to pay the contributions. (Compl. ¶ 13; Hagan Decl. ¶¶ 17, 22.) An audit revealed that River View failed to report, and thus failed to pay, contributions due and owing for the periods May 2010, November 2010, April 2011, and June 2011 through September 2011.[3] (Compl. ¶ 13; Hagan Decl. ¶ 27.) For the periods December 2010, September 2011, and October 2011, River View paid the reported contributions, but failed to pay them on time. (Compl. ¶ 13; Hagan Decl. ¶¶ 35-37.)

Plaintiffs filed the current action in this Court on July 6, 2012 pursuant to section 301 of the LMRA, 29 U.S.C. § 185, and sections 502(a)(3) and 502(e)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(e)(1) to recover due and unpaid benefit contributions, interest, liquidated damages, attorneys' fees and costs, and for an injunction requiring River View to submit to an audit for the period of January 2012 through the present.[4] (*See generally* Compl.) They completed service on Defendants on July 23, 2012 and filed proofs of service on July 25, 2012. [Docket Nos. 8, 9.] On September 6, 2012, Plaintiffs requested entry of default against Defendants [Docket No. 11], which the Court entered the following day [Docket No. 12]. Plaintiffs subsequently filed a motion for default judgment [Docket 18], which the court referred to the undersigned for a Report and Recommendation [Docket No. 20]. The court held a hearing on March 28, 2013. [*See* Docket No. 22 (proof of service on Defendants of default judgment hearing).] Defendants did not appear.

---

[3] In the Complaint and motion for default judgment, Plaintiffs also sought to recover unreported and unpaid contributions in the amount of $1,392.16 for the period June 2011. (Compl. ¶ 13; Hagan Decl. ¶ 32, Ex. R.) Following the hearing on this motion, Plaintiffs submitted a supplemental declaration in which they clarified that due to a clerical error, the unreported, unpaid contributions for hours worked in June 2011 were duplicative of hours claimed in the audit. (Lauziere Decl. Apr. 8, 2013, ¶¶ 4, 5.) Accordingly, Plaintiffs reduced the total amount sought in this motion by $1,392.16. (Lauziere Decl. ¶ 6.)

[4] After Plaintiffs filed the Complaint, they received a payment of $9,589.98 from River View. (Hagan Decl. ¶ 40.)

United States District Court
For the Northern District of California

## II. Default Judgment

### A.     Legal Standards

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The fourth factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

4

**B.     Analysis**

The court finds that it has subject matter jurisdiction over this case pursuant to 29 U.S.C. §§ 185 (granting labor union organizations power to sue employers in federal court) and 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms).  It exercises personal jurisdiction over Defendants because Defendant River View is a California corporation with its principal place of business in West Sacramento, California, (Compl. ¶ 7; Winchester Decl. Ex. A), and Defendant Goreshnik was served in this state, [*see* Docket Nos. 9, 22].  Defendants qualify as employers under 29 U.S.C. §§ 152(2) and 1002(5).  (Compl. ¶ 7.)  Regarding the adequacy of service of process, Rule 4(e)(2) allows for service of an individual by "delivering a copy of the summons and of the complaint to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).  A party may serve a corporation "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual").  Under California law, "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served."  Cal. Civ. Proc. Code § 415.10.  A summons can be served on a corporation by delivering a copy of the summons and of the complaint to the person designated as agent for service of process.  Cal. Civ. Proc. Code § 416.10(a).  The court has reviewed the proofs of service and finds that Plaintiffs properly served the summons and complaint on Defendants with personal service.  [*See* Docket Nos. 8, 9.]

Turning to the first *Eitel* factor, Plaintiffs will suffer great prejudice if the court does not enter a default judgment against Defendants because Plaintiffs otherwise have no means to recover the contributions that Defendants owe them.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Plaintiffs also fulfill the second and third *Eitel* factors.  First, Plaintiffs' complaint pleads the elements of a violation of 29 U.S.C. § 1145.[5]  Specifically, it claims that Defendant River View is an employer

---

[5] Section 1145 provides, in relevant part, that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

5

obligated under the collective bargaining agreement to make contributions to the Trust Funds and that River View failed to make such contributions. (Compl. ¶¶ 9-13.) As to Defendant Goreshnik, the complaint claims that he breached his fiduciary duties to Plaintiffs when he failed to ensure that River View made contributions to the Trust Funds and that this breach makes him liable to Plaintiffs. (Compl. ¶¶ 28-29.) Moreover, when a benefit plan secures a judgment under § 1145, § 1132(g)(2) entitles the plan to unpaid contributions, interest thereon, liquidated damages, and reasonable attorneys' fees and costs. In light of these facts and the pertinent law, Plaintiffs have submitted a legally sufficient complaint which will prevail on the merits. *See Bd. of Trs. of the Clerks v. Piedmont Lumber & Mill Co., Inc.*, No. 10-1757 MEJ, 2010 WL 4922677, at *4 (N.D. Cal. Nov. 29, 2010).

The fourth factor poses little difficulty for Plaintiffs. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted). The sum of actual and statutory damages, interest, attorneys' fees, and costs that Plaintiff seeks is $45,443.61, which the court finds neither gratuitous nor unreasonable. With respect to the fifth prong, Defendants have not appeared in this action, let alone contested any of Plaintiffs' material facts. Finally, nothing in the record suggests that Defendants defaulted due to excusable neglect. Plaintiffs have served them submissions relating to the case throughout the pendency of this action, [*see* Docket Nos. 8, 9, 22, 24], and Defendants have failed to participate in the litigation. *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005. Examining these facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits. The court therefore recommends an entry of a default judgment.

### III. Damages

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly,*

*Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18). With respect to cases arising out of ERISA, statute declares the following:

> in any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

**A.      Reported, Unpaid Contributions and Interest & Liquidated Damages Thereon**

For the periods September 2010 through November 2010 and August 2011, River View submitted Employer Reports of Contribution that show a total of 1036.5 hours worked, which amounts to a gross total of $14,045.68 in contributions due and unpaid. (Hagan Decl. ¶¶ 17, 18, 22, 23, Exs. I, J, L, M.) The 1.5% per month interest due on this principal through April 25, 2012 for each delinquent payment totals $3,425.04. (Hagan Decl. ¶¶ 19, 24, Exs. K, N.)

ERISA requires assessment of liquidated damages if "(1) the fiduciar[ies obtain a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers & Pipe Fitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (emphasis removed). The plan at issue in this case, the Master Agreement, provides for liquidated damages of $150 for each delinquent contribution.[6] (Hagan Decl. Ex. H.) However, section 1132(g)(2)(C) provides that Plaintiffs may

---

[6] A liquidated damages provision in a contract "must meet two conditions for enforceability. First, the harm caused by a breach must be very difficult or impossible to estimate [and] [s]econd, the amount fixed must be a reasonable forecast of just compensation for the harm caused." *Idaho Plumbers & Pipe Fitters Health & Welfare Fund*, 875 F.2d at 217 (internal citations omitted). Here, the harm caused by the breach is difficult to estimate because Plaintiffs must perform a variety of administrative and collection activities to recover delinquent contributions. (*See* Hagan Decl. Ex. B at 3.) The court finds the $150 assessed per contribution to be a reasonable forecast of just compensation for the potential harm.

1 again obtain the interest on the unpaid contributions in lieu of the contract rate for liquidated
2 damages if the former is greater than the latter. 29 U.S.C. § 1132(g)(2)(C). For Plaintiffs' reported,
3 unpaid contributions, the contractual liquidated damages comes to $600, far less than the $3,425.04
4 in interest. (Hagan Decl. ¶ 29, Ex. N.) Plaintiffs therefore may obtain an additional $3,425.04 in
5 interest. Accordingly, the total due for Defendants' reported, unpaid contributions is $20,895.76.

### B. Unreported, Unpaid Contributions and Interest & Liquidated Damages Thereon

For the periods covering May 2010, November 2010, April 2011, and June 2011 through September 2011, Plaintiffs learned that River View had failed to report hours worked and to pay $15,565.73 in corresponding contributions. (Hagan Decl. ¶¶ 27, 28, Exs. O, P, R, S; Lauziere Decl. ¶¶ 4, 5.) The 1.5% per month interest due through April 25, 2012 on this principal totals $2,217.23. (Hagan Decl. ¶ 29, Ex. Q.) For Plaintiffs' unreported, unpaid contributions, the contractual liquidated damages comes to $600. Accordingly, Plaintiffs receive an additional award of $2,217.23 in interest pursuant to section 1132(g)(2)(C). (Hagan Decl. ¶ 30, Ex. Q.) The total due for Defendants' unreported, unpaid contributions is $18,608.03. (*See* Lauziere Decl. ¶ 6.)

### C. Untimely Contributions and Interest & Liquidated Damages Thereon

During the periods December 2010, September 2011 and October 2011, River View made untimely contributions to the Trust Funds. (Hagan Decl. ¶¶ 35-37.) The 1.5% per month interest due through April 25, 2012 and liquidated damages on these late contributions, assessed at the contractual rate of $150 per delinquent month, total $536.16. (Hagan Decl. ¶¶ 35-37, Exs. T, U, V.)

### D. Attorneys' Fees & Costs

To date, Plaintiffs have incurred $14,194.50 in attorneys' fees based upon the following rates and hours: (1) 1.3 hours by Ronald L. Richman, a senior law firm shareholder, at a rate of $345 per hour; and (2) 47.4 hours by Edward Winchester, an associate, at a rate of $290 per hour. (Winchester Decl. ¶¶ 5-7, Ex. B.) These are reasonable San Francisco Bay Area rates for ERISA claims. *See, e.g.*, *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving hourly rate of $400 for associates and $150 for paralegals); *Langston v. N. Am. Asset Dev. Corp. Group Disability*, No. 08-2560 SI, 2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010) (approving hourly rate of $550 for partner and $150 for paralegals); *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d

1244, 1249 (N.D. Cal. 2008) (approving hourly rates of $350 and $330 for associates).  The time that Plaintiffs' counsel expended on this case, 48.7 hours, proves reasonable as well.  The court therefore recommends that Plaintiffs recover $14,194.50 in attorneys' fees.

The court also will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Contrs. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D).  Plaintiffs have incurred $799.14 in costs in the action to date. (Winchester Decl. ¶ 8, Ex. B.)  Because the court finds this sum reasonable, it recommends that Plaintiffs be granted $799.14 in costs.

### IV.  Defendant Goreshnik's Liability

The Trust Agreement governing the Trust Funds specifies that "all Contributions required by the Collective Bargaining Agreement to be made for the establishment and maintenance of Pension Plan, including all interest, income and other returns of any kind" are part of the Trust Funds. (Hagan Decl. Ex. B at 1.)  Accordingly, any unpaid contributions, interest, and liquidated damages owed to the Trust Funds are the assets of the Trust Funds.  *See Trs. of the S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1165-66 (C.D. Cal. 2006).

Pursuant to 29 U.S.C. § 1002(21)(A), an individual who "'exercises any discretionary authority or discretionary control respecting management'" of an employee benefit plan "'*or exercises any authority or control respecting management or disposition of its assets*'" qualifies as a plan fiduciary.  *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1162, 1168 (quoting § 1002(21)(A)) (emphasis added).  As this definition makes clear, a plan fiduciary "includes not only those named as fiduciaries in the plan," *id.* at 1167-68 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)); *accord N. Cali. Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1373 (9th Cir. 1990), and whether one is a plan fiduciary turns on a "'person's actions, not the official designation of his role.'"  *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1168 (quoting *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991)); *see Jumbo Markets, Inc.*, 906 F.2d at 1373.  For example, an individual who "ascertain[s] and report[s] the hours worked" by employees for employee benefit plans puts himself in a fiduciary position.  *Jumbo*

*Markets, Inc.*, 906 F.2d at 1373. In their complaint, Plaintiffs allege that Defendant Goreshnik "exercised authority or control over the payment of the employee fringe benefit contributions required to be made" to the Trust Funds. (Compl. ¶ 28.) These allegations suffice to establish that he was a plan fiduciary. *See Jumbo Markets, Inc.*, 906 F.2d at 1373; *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1169 (citing *Patelco Credit Union v. Sahni*, 262 F.3d 897, 909 (9th Cir. 2001); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420-22 (9th Cir. 1997); *Yeseta v. Baima*, 837 F.2d 380, 386 (9th Cir. 1988)).

Among an employee benefit plan fiduciary's duties is the duty to ensure that "'assets of a plan . . . never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan.'" *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1161 (quoting 29 U.S.C. § 1103(c)(1)) (ellipses in original). In addition, a fiduciary "'shall discharge his duties with respect to a plan solely in the interest of the participants.'" *Id.* (quoting 29 U.S.C. § 1104(a)(1)). If a fiduciary breaches his fiduciary obligations, he "'shall be personally liable to make good to such plan any losses to the plan . . . and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary.'" *Id.* (quoting 29 U.S.C. § 1109(a)). In their complaint, Plaintiffs allege that Goreshnik breached his fiduciary duties to the Trust Funds when River View failed to make its contributions, because he "failed to act for the exclusive purpose of providing benefits to participants in the Trust Funds' plans and their beneficiaries, and instead dealt with these assets of the Trust Funds in his own interest and/or the interest of River View." (Compl. ¶ 29.) Because the court must take this allegation as true, *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175, the court finds that Goreshnik breached his fiduciary duties to the Trust Funds and, therefore, is independently liable for the damages assessed in this report and recommendation.

## IV. Conclusion

For the foregoing reasons, the court recommends that the District Court grant Plaintiffs' Motion for Default Judgment against Defendants. The court further recommends that the District Court award Plaintiffs unpaid contributions, interest, and liquidated damages in the amount of $40,039.95, less the $9,589.98 payment River View made following the filing of Plaintiffs'

Complaint, for a total award of $30,449.97. The court also recommends that the District Court award Plaintiffs attorneys' fees and costs amounting to $14,194.50 and $799.14, respectively. The court finally recommends that Defendants be enjoined to timely submit all required monthly contribution reports and contributions due and owing for audit.

Plaintiffs shall serve a copy of this order on Defendants and file proof of service with the Court. Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

IT IS SO ORDERED.

Dated: April 17, 2013



_____
DONNA M. RYU
United States Magistrate Judge